IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RONALD J. POSLUNS,                              *
                                                *
                    Plaintiff,                  *
                                                *
vs.                                             *        No. 4:10CV01294 SWW
                                                *
EDUCATION MANAGEMENT                            *
CORPORATION, LLC, a wholly-owned                *
subsidiary of EDUCATION MANAGEMENT              *
HOLDINGS, LLC which is wholly-owned by          *
EDUCATION MANAGEMENT                            *
CORPORATION; ARGOSY EDUCATION                   *
GROUP, INC.; ARGOSY UNIVERSITY;                 *
ARGOSY UNIVERSITY ONLINE; KAREN                 *
BAILLIE, JD.; RICHARD M BELCASTRO,              *
PhD.; SUSAN BURGESS; MARGUERITE                 *
CHABAU, PhD.; TERESA COLLINS-JONES,             *
PhD.; TIMOTHY DRAKE, PhD.; ADAM                 *
FAGELSON; RITA JENSEN, PhD.;                    *
AMANDA KIMMEL; DEVITT KRAMER,                   *
JD.; BART LERNER, EdD.; JOHN                     *
MCKERNAN, JR., JD.; TODD S. NELSON,             *
ROBERT A. NIESIOBEDZKI, PhD.; KATE              *
NOONE; WILLIAM NOWLIN, Phd., JOHN               *
T. SOUTH III; SHIELA SWEENEY, PhD.;             *
CRAIG SWENSON, PhD.; KATHRYN J.                 *
TOOREDMAN, PhD.; THOMAS VONK,                   *
PhD.; AND JOHN/JANE DOE 1-100;                  *
                                                *
                    Defendants.                 *


**Memorandum Opinion and Order**

        Plaintiff Ronald J. Posluns filed a complaint on August 24, 2010, in state court in Pulaski

County, Arkansas, asserting claims of wrongful termination, misrepresentation, fraudulent

inducement, false advertising, defamation, and outrage.  Defendants removed the case to federal

court on September 15, 2010, alleging diversity and federal question jurisdiction.  On September

21, 2010, defendants filed a motion to dismiss for failure to state a claim and, in the alternative, a motion to strike certain allegations in the complaint.  Plaintiff responded to the motions and filed a motion to remand to which defendants responded.  Defendants also filed a reply to plaintiff's response to their motion to dismiss.  For the reasons stated below, the motion to remand is denied and the motion to dismiss is granted.

I.

On a motion to remand, the burden of demonstrating the federal court's jurisdiction rests with the removing defendant and must be proven by a preponderance of the evidence.  *Altimore v. Mount Mercy College,* 420 F.3d 763, 768 (8th Cir. 2005).  Defendants argue the Court has diversity and federal question jurisdiction.  Plaintiff is an Arkansas resident and defendants, who are corporate entities as well as individuals employed by the entities, aver none of them are residents of Arkansas for purposes of diversity jurisdiction. As to amount in controversy, plaintiff alleges defendants deprived him of the opportunity to receive compensation and benefits in excess of $100,000 per year plus tuition reimbursement for family members in the amount of approximately $50,000.00.  He also seeks punitive damages.  Compl. at ¶ 164-65.

Plaintiff challenges removal first asserting there is nothing in the record establishing that all the defendants consent to removal.  He further argues that defendants did not state their "citizenship" but instead stated the place of their incorporation or residency.  He argues averment of "residence" in another state is not an averment of "citizenship" for purposes of diversity jurisdiction.[1]  Plaintiff also contends that defendants' argument that the amount in controversy

---

[1]Plaintiff also argues that separate defendants Argosy University ("AU") and Argosy University Online ("AUO") did not state their "citizenship" but instead stated they are non existent entities.

exceeds $75,000.00 is mere speculation.

The Court finds the motion to remand should be denied because defendants have met their burden of proof to establish federal diversity jurisdiction. Plaintiff does not contest there is complete diversity between the parties and he does not dispute that the requisite amount in controversy has been established by his own complaint.[2]

## II.

On April 29, 2009, defendant Education Management Corporation ("EDMC") offered plaintiff a position as a full-time faculty member with the Online campus of Argosy University[3], effective May 4, 2009. Plaintiff accepted the offer on April 30, 2009. Compl., Ex. A. By letter dated July 28, 2010, EDMC informed plaintiff that his appointment was not being renewed, he was being placed on administrative leave, and his last day of employment would be August 31, 2010. *Id.*, Ex. B. Separate defendant Susan Burgess, EDMC's director of human resources, signed the letter. Plaintiff also attached to his complaint a copy of a letter dated July 9, 2010, and signed by separate defendants Richard Belcastro, Bart Lerner, and Kathryn J. Tooredman, stating plaintiff's letter of appointment was not being renewed. *Id.*, Ex. C. Plaintiff then filed a lawsuit setting forth eight separate causes of action against twenty-seven different defendants.

In Count I, plaintiff alleges his termination was unlawful under the public policy exception to the at-will doctrine. *See* Compl. ¶¶ 167-183. In Counts II through VI, plaintiff

---

[2]Defendants assert as an alternative that the Court has federal question jurisdiction based on references to federal law in plaintiff's complaint. Plaintiff, however, avows that none of his claims arise under federal law. *See* Pl's. Mot. to Remand, ¶ 22 and Defs.' Resp. at ¶ C.

[3]One of EDMC's affiliated schools is Argosy University, which focuses on education, business, health sciences, and psychology and behavioral science. Argosy University also offers on-line programs ("Argosy University Online"). Defs.' Br. in Supp. Mot. Dismiss at p. 3.

alleges defendants engaged in misrepresentation, fraud, and false advertising.  *Id.* at ¶¶ 184-329.

In Count VII, plaintiff asserts a claim for defamation against separate defendant Drake, *id.* at

¶¶330-341; and in Count VIII, plaintiff alleges a claim of outrage against all defendants.  *Id.* at

342-348.  Defendants argue plaintiff's complaint should be dismissed pursuant to Fed.R.Civ.P.

12(b)(6), failure to state a claim upon which relief may be granted.

     In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

factual allegations in the complaint, but is "not bound to accept as true a legal conclusion couched

as a factual allegation."  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009)(quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Id*. at 1949-50.

*Count I - Wrongful Termination*

     Generally, an employment relationship is terminable at the will of an employer or an

employee. *Smith v. American Greetings Corp.,* 804 S.W.2d 683, 684 (Ark. 1991).  "[A]n at-will

employee may be discharged for good cause, no cause, or even a morally wrong cause."  *Id.*

Exceptions to the at-will employment doctrine exist where an employee is discharged for: (1)

refusing to violate a criminal statute; (2) exercising a statutory right; or (3) complying with a statutory duty.  *Id.*  Arkansas law also recognizes a contract cause of action for wrongful discharge when an employee is discharged in violation of a well-established public policy of Arkansas.  *See Sterling Drug, Inc. v. Oxford,* 743 S.W.2d 380, 385 (Ark. 1988).  This exception is "limited," and does not protect "private" or "proprietary" interests.  *See Smith,* 804 S.W.2d at 684.  A discharge violates public policy when the basis for the discharge is "so repugnant to the general good as to deserve the label 'against public policy.'" *Id.* (quoting *Lucas v. Brown & Root, Inc.,* 736 F.2d 1202 (8th Cir 1984).

The public policy of Arkansas is found only in its constitution and statutes.  *See Sterling,* 743 S.W.2d at 385.  This is because the public policy is declared by the legislature and not by the courts.  *Dray v. City of Bentonville,* 2000 WL 1506517 *1 (Ark. App. Oct. 11, 2000).  Where a plaintiff does not identify the specific public policy that was violated but instead "alleges the redress of a private wrong," a dismissal for failure to state facts upon which relief can be granted is proper.  *Smith,* 804 S.W.2d at 685.

> Plaintiff acknowledges he was an at-will employee.  He alleges he
>
> was fired in violation of a well-established public policy of the State for the following three reasons: (1) Dr. Posluns refused to violate the law or any well-established and clear mandate of public policy expressed in the constitutions, statutes, or rules or regulations promulgated by a governmental body, or (2) Dr. Posluns reported wrongdoing to superiors, or (3) Dr. Posluns reported wrongdoing to public authorities.

Compl. at ¶ 169.

In support of his claim of wrongful termination, plaintiff alleges that defendant Nowlin directed him to change the assignment grades for 26 students in two courses he was teaching or

face insubordination and termination.  Plaintiff alleges that he refused to change grades[4] because to do so would violate a well-established and clear mandate of public policy, specifically Ark. Code Ann. §4-1-304 (Supp. 2009)(LexisNexis).  Section 4-1-304 provides: "Every contract or duty within this subtitle [the Uniform Commercial Code] imposes an obligation of good faith in its performance and enforcement."  Plaintiff fails to allege that there is any contract between himself and defendants to which the Uniform Commercial Code applies and, in fact, affirmatively alleges that "there is no contract, implied or express, between Plaintiff and [Argosy]."  Compl., ¶ 168.  Section 4-1-304 therefore does not provide the predicate "public policy" necessary to assert a wrongful termination claim.

To the extent that plaintiff attempts to base his claim on Arkansas' general public policy of good faith and fair dealing, that argument has been expressly rejected.  In *Smith v. Southern Starr of Arkansas, Inc.*, 700 F. Supp. 1026, 1027 (E.D.Ark. 1988), the plaintiff alleged his termination violated the "well-established public policy of good faith and fair dealing implied in every contractual relationship."  The court rejected his claim, stating that such a theory would "completely swallow the rule" of termination at will.  *Id.*  The court dismissed the claim pursuant to Rule 12(b)(6).

Plaintiff also claims his termination violates public policy because he "reported wrongdoing to superiors."  Compl. at ¶ 169.  As noted above, however, plaintiff fails to establish any cognizable "wrongdoing" that is supported by a specific, well-established public policy of Arkansas.  His allegations that he told his superiors of Nowlin's threat to terminate him if he did

---

[4]There seems to be a dispute over whether Nowlin asked plaintiff to change grades or to grade previously-ungraded student work.  *See* Mot. to Dismiss, Ex. A (e-mail exchange between plaintiff and Nowlin).

not comply with the issuance of grades for a prior student project and that doing so would violate

the implied covenant of good faith and fair dealing are not sufficient to state a claim for wrongful

termination under Arkansas law.

Lastly, plaintiff claims his termination violates public policy because it was in retaliation

for reporting "wrongdoing to public authorities."  Compl. at ¶¶ 177-78.  He alleges as follows:

> Dr. Posluns forewarned his superiors, Human Relations personnel, specifically
> Defendants Burgess and Kimmel, from February to July of 2010, Defendant
> Kramer in June, 2010 and Defendant Baillie in June and July, 2010 of
> EDMC/AEG/AU/AUO violations of the following Code of Ethics and Conduct
> and state and federal unlawful activities
>
>> (i) Pending federal agency investigations
>>
>> (ii) Possibility of qui tam cases
>>
>> (iii) Possibility of a Civil Rico lawsuit
>>
>> (iv) Sarbanes-Oxley violations resulting from Title IV violations
>>
>> (v) SEC investigation-Sarbanes-Oxley violations
>>
>> (vi) OAG investigations into for-profit colleges
>>
>> (vii) Senate subcommittee investigations into for-profit colleges
>>
>> (viii) EDMC/AEG/AU/AUO Title IV violations
>>
>> (ix) EDMC/AEG/AU/AUO (past, present and future affiliates) doing business with EDMC/AEG/AU/AUO affiliates and competing educational institutions
>>
>> (x) EDMC/AEG/AU/AUO employee gifts and kickbacks
>>
>> (xi) Accreditation violations
>>
>> (xii) Other issues related to EDMC/AEG/AU/AUO,
>> EDMC/AEG/AU/AUO affiliates and employee alleged
>> wrongdoing, including retaliation, among other impending legal
>> issues.

Compl. at ¶¶ 136, 177.  Plaintiff fails to identify any "wrongdoing" that violates a public policy

encompassed by the public policy of Arkansas through one of its statutes or its constitution.  Mere

conclusory allegations of public policy violations do not meet the standards espoused by the

Supreme Court in *Iqbal*.  Therefore, while plaintiff's allegations concerning federal matters may

relate to other claims, they do not support a common law claim for wrongful termination under Arkansas law.

*Counts II through V - Misrepresentation, Fraud, and Fraudulent Inducement*

In order to state a claim for misrepresentation/fraud, a plaintiff must plead facts supporting each of the following elements: "(1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance." *Goforth v. Smith*, 991 S.W.2d 579, 586 (Ark. 1999).  Representations relating to future events, predictions and intentions are not false representations of material fact and cannot, therefore, form the predicate for a fraud action. *Id.*  Expressions of opinion in the nature of "puffing" also cannot constitute misrepresentations of fact.  *See Grendell v. Kiehl*, 723 S.W.2d 830, 832-33 (Ark. 1987)(action will not lie for misstatements of opinion as distinguished from those of fact). Accordingly, where a plaintiff fails to plead a misrepresentation of fact - as opposed to opinion, intentions or "puffing" - dismissal of a fraud claim is proper.  *See Gorman v. Gilliam*, 2010 Ark. App. 118 (Feb. 11, 2010)(upholding dismissal where no misrepresentations of facts).

In Count II, plaintiff alleges that the letter of termination signed by separate defendants on July 9, 2010, stated that plaintiff's employment would end on August 31, 2010 "as per the terms of your existing letter of appointment."  Compl., Ex. C.  Plaintiff asserts defendants knew or should have known that plaintiff never received a letter of appointment, and that he "relied on the termination letter, with no letterhead, and an email, with uncertain author (anyone can use anybody else's name)."  Pl's. Resp. to Mot. Dismiss, p. 29.

There are no allegations that demonstrate how plaintiff, to his detriment, took actions, or refrained from taking particular actions, based upon the alleged misrepresentation about whether or not there was an existing letter of appointment.  As such, the complaint lacks enough factual matter to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *See Twombly*, 550 U.S. at 556.  Mere conclusions of justifiable reliance and recitals of the elements of fraud do not meet the *Iqbal* standards.  Accordingly, the Court finds plaintiff fails to state a cause of action for misrepresentation in Count II.

In Count III, plaintiff alleges misrepresentations on the part of certain defendants in connection with his Performance and Appraisal Report ("PPAR") for the year 2009-10.  Plaintiff complains separate defendants Drake and Nowlin completed the PPAR without reviewing the most recent independent evaluation of plaintiff's performance, called a SNAPSHOT, which was conducted on May 3, 2010, two days before separate defendants submitted plaintiff's PPAR. Compl. at ¶ 200.  He asserts that the negative comments and conclusions stated in the PPAR were misrepresentations of the facts.  In particular, plaintiff disagrees with separate defendants' conclusions that plaintiff needs to "provide more substantive feedback to the students through the online discussion" and  "needs to be more expressive when answering questions or giving directions through the threaded discussion," Compl. at ¶ 203.  He complains that separate defendants misrepresented the percentage of unfavorable student comments and that they were able to review all student comments included in three particular data bases.  *Id*. Plaintiff contests the conclusions that plaintiff's "classrooms seem disorganized" and that the "grading of written assignments needs to be more timely and comprehensive;" that he "impedes his ability to work with teams and task forces . . is not a good listener and becomes overly defensive when

[discussing] performance issues;" that he "needs to work on his personal skills such as listening and communicating in groups;" and that he "needs further training in the areas of providing feedback to students in the context of both threaded discussion and the grade book." *Id.*

Separate defendants' statements are not statements of fact but are subjective opinion on which the parties simply disagree. *Grendell*, 723 S.W.2d at 832 (expressions of opinion are not actionable as misrepresentations). The alleged statements on which plaintiff's claims are based therefore do not satisfy the requisite elements necessary for, and fail to state claim for, misrepresentation. *See Johnson v. Chesebrough-Ponds USA Co.,* 918 F. Supp. 543, 549 (D. Conn. 1996)(supervisor's comments on plaintiff's performance were expressions of opinion).

Count IV centers on plaintiff's claim that defendants, through statements in official documents such as the academic catalog, handbooks, policies, and other materials, made actionable misrepresentations on which plaintiff relied. He claims certain defendants made "misrepresentations" to induce him to enter into an employment relationship with EDMC. The statements set out in plaintiff's complaint include the following:

> University has developed a curriculum that focuses on interpersonal skills and practical experience alongside academic learning.

> At Argosy University, we recognize that knowing how to interact effectively with other people is as vital to your career as anything else you can learn.

> Whatever your career, it will be defined by how well you understand and interact with other people. At Argosy University, we recognize this essential truth.

> Our passion is teaching and learning. We develop professional competence, provide opportunity for personal growth, and foster interpersonal effectiveness;

> The administration and faculty of Argosy University, guided by ethical principles and an abiding and deep respect for the process of higher education and the profession of teaching, recognize their special responsibilities as members of the professorate.  Those responsibilities include the need to develop and improve their competence as educators, to evidence and demonstrate to their students the best scholarly and ethical standards of their discipline, and to adhere to their proper roles as intellectual guides and mentors.  Administrators and faculty are committed to the principles of fairness and objectivity in the assessment of academic performance.  The academic staff will avoid using their positions for personal gain or advantage, or obtain favored status for any special group or individual.

Compl. at ¶¶ 213-217.  The complaint goes on to list other such statements as well as statements from the Code of Business Ethics and Conduct, such as:

> The Business Ethics Program was developed to guide our business practices with regards to compliance with law and maintenance of the highest moral, legal, ethical and financial reporting standards. Our Code of Business Ethics and Conduct (the "Code") applies equally to EDMC directors as well as employees at all Levels;

> We will not tolerate any form of retaliation against anyone who in good faith reports possible violations even if, upon investigation, suspicions prove to be unwarranted.  You are also responsible for cooperating with EDMC representatives in internal investigations of possible Code violations;

> Do Not Feel Pressured: You are never expected to violate any law, policy, or ethical standard, and should never feel pressured to do so.  You are expected to act with integrity and report any pressure received.

*See* Compl. at ¶¶ 234-35.

These statements constitute expressions of opinion, intentions, and/or "puffing" for the purposes of marketing the school, and statements of future circumstances.  They are not the type of statements on which a claim for misrepresentation can be predicated.  *See e.g. Trooien v. Mansour*, 608 F.3d 1020 (8th Cir. 2010)(executive officer's statement to investor that he was

"very good at maneuvering" within potential acquiring corporation could not support a negligent or fraudulent misrepresentation claim; such a statement was merely an opinion and too general and indefinite to be a representation of fact); *LaScola v. U.S. Sprint Commc'ns*, 946 F2d. 559, 568 (7th Cir. 1991)(puffery "common between a prospective employer and employee" and are merely statements of opinion that "cannot qualify as fraudulent misrepresentations")(internal quotations and citation omitted).  Plaintiff's allegation that defendants never intended to perform in accordance with these statements does not convert them from expressions of opinion and intention to statements of fact.  The Court finds the statements set forth in Count IV fail to state a claim as a matter of law.

In Count V, plaintiff alleges that certain defendants made misrepresentations to him to induce him to enter into an employment relationship with EDMC.  Compl. at ¶ 265.  A claim of fraudulent inducement requires the same elements as a claim for misrepresentation, and the Court finds this count should be dismissed for the same reasons as Counts II, III, and IV.  Plaintiff relies on the same kind of statements cited previously, such as:

We hope that you will accept our invitation to be part of the university community;

At Argosy University, we recognize that knowing how to interact effectively with other people is as vital to your career as anything else you can learn;

Whatever your career, it will be defined by how well you understand and interact with other people;

Our passion is teaching and learning.  We develop professional competence, provide opportunity for personal growth, and foster interpersonal effectiveness;

Argosy University seeks to recruit and employ a faculty and staff who are service-

oriented and student-centered, and who combine academic credentials of high
quality with substantive career experience.

Compl. at ¶¶ 265-70.

Plaintiff's subjective disagreements with how Argosy University portrays itself to the

community, its students, and in its Mission Statement are not statements of fact sufficient to

constitute misrepresentations to plaintiff about his employment.  Accordingly, they are

insufficient as a matter of law to support an individual claim by plaintiff that he was subject to

fraud.  Likewise, plaintiff has failed to allege facts showing how he was damaged by accepting a

job at which he worked for over a year and was paid in full.

*Count VI - False Advertising*

Plaintiff alleges defendants engaged in false advertising by making misrepresentations

concerning their goals, intentions, and objectives in inducing him to enter into an employment

relationship with EDMC.  He repeats almost all of the same alleged "misrepresentations" in

support of this claim as those cited for his misrepresentation and fraudulent inducement claims.

Compl. at ¶¶ 298-329.  In addition to being unaware of any cause of action under Arkansas

common law for "false advertising," the Court finds plaintiff fails to allege any misrepresentations

of fact that would legally support a claim for "false advertising."

*Count VII - Defamation Claim Against Drake*

Plaintiff alleges separate defendant Timothy Drake made a false statement of fact in an e-

mail dated July 31, 2010, and addressed to Argosy University Online doctoral students, wherein

Drake stated: "I am sorry to inform you that Dr. Ronald Posluns, the Chair of your Dissertation

Committee, is no longer a Faculty Member wit[h] Argosy University Online."  Compl. at ¶ 330-

31. Defendant Drake was employed by Argosy University as the Assistant Dean for Argosy University Online College of Business, and was plaintiff's immediate supervisor until May 2010. At the time of the alleged incident, Drake was Program Chair for Argosy University Online College of Business.  Plaintiff claims Drake's statement was defamatory because at the time the statement was made, plaintiff was on administrative leave until the expiration of his appointment on August 31, 2010.

To present an action for defamation, a plaintiff must allege the following: (1) defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages.  *Superior Federal Bank v. Mackey*, 129 S.W.3d 324, 331 (Ark. App. 2003).  "A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation."  *Id.*

The Court finds the statement is not defamatory in nature and therefore cannot support a claim for defamation.  Setting aside the issue of whether or not plaintiff was a functioning faculty member at the time the statement was made, given he was placed on administrative leave, there is nothing in Drake's alleged statement that is defamatory in nature.  The statement makes no suggestion plaintiff did anything wrong; it provides no explanation whatsoever as to why plaintiff is no longer a faculty member.

In addition, under Arkansas law, "[a] publication may be conditionally privileged if the circumstances induce a correct or reasonable belief that (1) there is information that affects a sufficiently important interest of the recipient or third person; and (2) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its

14

publication is otherwise within the generally accepted standards of decent conduct." *Superior Federal Bank*, 129 S.W.3d at 333. Separate defendant Drake, as the University's Program Chair, had the right and obligation to inform students of changes in the faculty, changes in who will be providing classroom instruction, and changes that otherwise affect the students' studies and classes. Accordingly, even assuming the statement attributed to Drake could be deemed defamatory, the statement cannot as a matter of law, provide the basis for a cause of action for defamation because it was conditionally privilged.

*Count VIII - Outrage*

To establish a claim for outrage under Arkansas law, a plaintiff must establish that: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result; (2) the defendant's conduct was extreme, outrageous, and utterly intolerable in a civilized community; (3) the defendant's action caused the anguish or distress to the employee; and (4) the emotional distress suffered was severe and of a type that no reasonable person should be expected to endure. *See Rorie v. United Parcel Service, Inc.,* 151 F.3d 757, 762 (8th Cir. 1998). The tort of outrage under Arkansas law is narrowly construed. *See Doe v. Wright*, 82 F.3d 265, 269 (8th Cir. 1996); *Travelers Ins. Co. v. Smith*, 991 S.W 2d 591, 595 (Ark. 1999). In the employment context, the tort of outrage is seldom recognized because employers must have considerable latitude in dealing with employees. *See City of Green Forest v. Morse*, 873 S.W.2d 155, 156 (Ark. 1994). Accordingly, the tort is not to be liberally interpreted, *Milam v. Bank of Cabot*, 937 S.W. 2d 653, 658 (Ark. 1997), and is to be viewed especially strictly in the context of the employment relationship. *Smith v. American Greetings Corp.*, 804 S.W.2d 683, 686 (Ark. 1981).

The question of whether conduct is so extreme and outrageous as to be tortious is initially one of law rather than fact.  *See Givens v.* Hixson, 631 S.W.2d 263, 264 (Ark. 1982); *see also Orlando v. Alamo*, 646 F.2d 1288, 1290 (8th Cir. 1981)(court properly held as a matter of law that conduct complained of did not rise to level of extreme and outrageous).  Merely describing the conduct as outrageous does not make it so.  *Givens, supra*.

Here, plaintiff's allegations of outrage are summarized in paragraph 342 of the Complaint:

> instant dismissal from the doctoral residency; the shunning of Dr. Posluns; his coming forward to report allegations of wrongdoing . . . the false accusation regarding his involvement in the Sarasota student incident; the sham Performance Evaluation and Appraisal Review; the deletion of Dr. Posluns electronic file(s); the employment discrimination when Dr. Posluns applied for another position; the threat of insubordination and termination if Dr. Poslund refused to violate public policy; the offer of a "financial accommodation" if Dr. Posluns agreed to leave the university and keep his mouth shut; and his actual termination based on a false premise and in violation of the public policy exception.

In *Palmer v. Arkansas Council of Economic Educ.*, 40 S.W.3d 784, 792 (Ark. 2001), the Arkansas Supreme Court held that the plaintiff's allegations that she was improperly written up for performance problems, improperly placed on probation, and wrongfully terminated failed to rise to the level of "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community" and, therefore, failed to state a claim for outrage.  In *Givens*, 631 S.W.2d at 264, the Arkansas Supreme Court found that an employee, who had been angrily discharged by his boss, had not plead conduct "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *See also Cessna v. Gray*, 316 S.W.3d 257, 259-60 (Ark.App. 2009)(threats of supervisors to cause imminent physical harm during working hours insufficient to support outrage claim).

16

The Court finds plaintiff's allegations fall short of showing conduct that is so extreme and outrageous as to go beyond all possible bounds of decency and to be utterly intolerable in a civilized society.  In addition, plaintiff alleges that "[s]uch conduct proximately caused damages to [Plaintiff] in the nature of emotional distress.  The emotional distress was reasonable and justified under the circumstances and is so severe that no reasonable person . . . could be expected to endure it."  Compl. at ¶ 346.  Plaintiff fails to allege what emotional distress he suffered and fails to plead any physical harm or objective symptoms of the requisite severe distress.  *See Jones v. Clinton*, 990 F.Supp. 657, 677-78 (E.D.Ark. 1998)(no evidence offensive conduct resulted in physical harm or objective symptoms of the requisite severe distress).

Further, the conduct about which plaintiff complains occurred during a relatively short period of time.  The first allegation of wrongdoing is plaintiff's claim that he was removed from the doctoral residency program in February 2010.  Six months later, he filed his complaint.   Also, there is no allegation that plaintiff is particularly susceptible to emotional distress.  *See Jones, supra*, at 677  (courts should consider the particular conduct at issue, the duration of the conduct, the relationship between the plaintiff and the defendant, and the defendant's awareness that plaintiff is "particularly susceptible to emotional distress by reason of some physical or mental peculiarity").  Finally, plaintiff names eleven defendants whose names do not appear in any of the other causes of action.  As to those eleven, plaintiff alleges they, for example, misrepresented the school as "vibrant and active" and "dedicated to quality instruction with a supportive atmosphere."  Compl. at ¶¶ 41, 42, 45, 47, 49-52, 54-56, 80.  Some are alleged not to have spoken to plaintiff at the airport.  *Id*. at ¶¶ 134-35. The Court finds plaintiff's allegations fail to state a claim for relief for the tort of outrage.

III.

IT IS THEREFORE ORDERED that plaintiff's motion to remand [docket entry 17] is denied; defendants' motion to dismiss [docket entry 8] is granted.  Defendants' motion to strike [docket entry 10] is denied as moot.  Judgment will be entered accordingly.

DATED this 21st day of December, 2010.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE